UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Cardiovascular Systems, Inc.,

    Plaintiff,

v.

Dr. Leonid Shturman,

    Defendant.

File No. _____ (____/____)

**COMPLAINT**
**(JURY DEMAND)**

---

Plaintiff Cardiovascular Systems, Inc. f/k/a Shturman Cardiology Systems, Inc., America, for its complaint against Dr. Leonid Shturman, states and alleges as follows:

## THE PARTIES

1. Cardiovascular Systems, Inc. ("CSI") is a Minnesota corporation with its principal place of business at 651 Campus Drive, St. Paul, Minnesota.

2. Upon information and belief, Dr. Leonid Shturman ("Dr. Shturman") is a person residing in Switzerland.

3. This is an action for declaratory judgment and breach of employment contract. The Court has jurisdiction pursuant to 28 USC § 1332, because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Dr. Shturman because he committed acts and/or transacted business related to this case in Minnesota.

5. Venue is proper under 28 USC § 1391 because a substantial part of the events giving rise to this action occurred in this District.

## BACKGROUND FACTS

6. CSI was formerly known as Shturman Cardiology Systems, Inc.

7. At all relevant times, CSI was engaged in the specialized and highly competitive business of developing, designing, manufacturing, selling, and/or servicing products and technical equipment relating to the treatment of cardiovascular disease.

8. CSI's former Russian subsidiary, ZAO Shturman Cardiology Systems ("SCS Russia") was, at all relevant times, engaged in the specialized and highly competitive business of designing, developing and testing of prototypes of rotational atherectomy devices.

9. On or about March 2000, CSI entered into an employment agreement with Dr. Shturman pursuant to which Dr. Shturman served as Chairman of the Board and Chief Executive Officer of CSI and each of its subsidiaries (the "Employment Agreement").

10. The Employment Agreement included a covenant not to compete, and an agreement to assign to CSI all inventions made by him for the diagnosis and treatment of the diseases of the heart. Dr. Shturman participated extensively in the drafting and preparation of the Employment Agreement.

11. Defendant signed the Employment Agreement on or about January 7, 2000. A signed copy of the Employment Agreement is attached to this Complaint as **Exhibit A**.

12. The assignment of invention provision in the Employment Agreement provides that, for the period, March 1, 2000 until February 28, 2003, or unless terminated sooner, or extended by 90 days beyond February 28, 2003:

> Any inventions made by Dr. Shturman which are primarily applicable for diagnosis or treatment of coronary or peripheral vessels (arteries and veins) or for diagnosis or treatment of any diseases of the heart itself, and which are disclosed by Dr. Shturman to patent attorneys or otherwise documented by Dr. Shturman during the Term, shall be assigned by Dr. Shturman to the Company.

13. On or about February 15, 2002, Dr. Shturman resigned as the Chairman of the Board, President and Chief Executive Officer of CSI.

14. From November 1995 through June 2002, Dr. Shturman worked as part of a team at SCS, Russia. The other team members included engineers Aleksey Filippov and Dmitri Prudnikov. The team members worked to improve the performance of existing rotational atherectomy devices – devices that are inserted in an artery and, once inserted, rapidly rotated to remove blockages. The shaft of the device has an eccentric enlarged section with an abrasive coating.

15. As part of this work, the team discussed potential ways to improve the stability of the drive shaft by reducing the level of vibrations during high speed rotation.

16. Another design problem that was discussed and worked on involved methods to increase the orbital amplitude of the eccentric enlarged section of the drive

shaft during high speed rotation beyond that of the resting eccentric enlarged section of the drive shaft.

17. During the period January through April, 2002, Dmitri Prudnikov and Dr. Shturman jointly co-invented the solution to such design problems by using counterbalance weights on either side of the abrasive enlarged section of the drive shaft.

18. In particular, Dmitri Prudnikov and Dr. Shturman used distal and proximal counterweights to control the orbital amplitude of the abrasive enlarged section of the drive shaft during high-speed rotation.

19. During this time, Dmitri Prudnikov created and tested 15 to 20 samples using lead counterweights.

20. Dmitri Prudnikov was in close contact with Dr. Shturman during these experiments, and Dmitri Prudnikov reported his findings to Dr. Shturman.

21. Dr. Shturman also viewed the prototypes.

22. The testing and results were documented in sketches and also in a laboratory notebook.

23. On or about June, 2002, Dr. Shturman informed Dmitri Prudnikov and Aleksey Filippov that there was no more funding, and that their work would have to stop.

24. On or about November, 2006, CSI discovered that in violation of his employment agreement, instead of assigning the patent rights to CSI, Dr. Shturman applied for patents as the sole inventor for the same invention conceived and developed during his employment with CSI and SCS, Russia.

25.     In particular, the concept of using distal and proximal counterweights to control the orbital amplitude of an abrasive element during high-speed rotation as conceived by Dmitri Prudnikov and Dr. Shturman is embodied in the following published patent applications listing Dr. Shturman as the applicant and sole inventor: WO 2006/126176, published November 30, 2006 for "A Rotational Device with Eccentric Abrasive Element and Method of Use"; GB 2,426,458 published November 30, 2006 for "Atherectomy Device"; and WO 2006/126175, published November 30, 2006 for "A Rotational Atherectomy Device and Method of Use."  A cover of the published patent applications is attached hereto as **Exhibit B**.

## COUNT I
### (Breach of Employment Agreement – Failure to Assign Invention)

26.     CSI restates and incorporates by reference all previous paragraphs.

27.     Dr. Shturman agreed to the terms of the Employment Agreement offered by CSI, creating a binding and lawful contract.

28.     During the term of his employment, Dr. Shturman jointly worked with Dmitri Prudnikov to invent an atherectomy device having counterbalance weights on either side of the abrasive enlarged section of the drive shaft to improve the stability of the drive shaft.

29.     During the term of his employment, the invention was documented in sketches and also in a laboratory notebook.

30. Pursuant to the Employment Agreement, Dr. Shturman is required to assign all such inventions to CSI.

31. By failing to assign said inventions to CSI and applying for a patent in his name, Dr. Shturman has breached the Employment Agreement.

32. As a result of the breach, CSI has been damaged in an amount to be proven at trial.

## COUNT II
### (Quantum Meruit)

33. CSI restates and incorporates by reference all previous paragraphs.

34. Dr. Shturman received a benefit from CSI in the form of an invention which belongs to CSI.

35. Dr. Shturman is not entitled to retain the benefit of the invention pursuant to the employment agreement with CSI.

36. Dr. Shturman's retention of the invention is unjust and inequitable.

37. By applying for a patent, Dr. Shturman has unjustly enriched himself to CSI's detriment in an amount to be proven at trial.

## COUNT III
### (Declaratory Judgment)

38. CSI restates and incorporates by reference all previous paragraphs.

39. CSI seeks a Declaratory Judgment that the invention using counterbalance weights on either side of the abrasive enlarged section of the drive shaft was an invention made by Dr. Shturman and Dmitri Prudnikov during Dr. Shturman's term with SCS

and/or its subsidiaries, and CSI is the rightful owner of the said invention, therefore, pursuant to the employment agreement the said invention must be assigned by Dr. Shturman to CSI.

## JURY DEMAND

1. CSI demands a jury trial for all issues triable to a jury.

**WHEREFORE**, CSI requests the Court to enter judgment as follows:

1. Judgment against Dr. Shturman for breach of the Employment Agreement, in an amount to be proven at trial;

2. A declaratory judgment that the invention using counterbalance weights on either side of the abrasive enlarged section of the drive shaft was an invention made by Dr. Shturman and Dmitri Prudnikov during Dr. Shturman's term with CSI;

3. A declaratory judgment that since CSI is the rightful owner of the said invention, said invention must be assigned by Dr. Shturman to CSI, and Dr. Shturman cannot apply for patents on said invention;

4. Award CSI its costs and attorneys' fees incurred in this action; and

5. For such other relief the Court deems just and reasonable.

Dated: August 20, 2007

s/ Rachna B. Sullivan
David R. Marshall (#184457)
Rachna B. Sullivan (#272565)
James R. Mayer (#312241)
Fredrikson & Byron, P.A.
200 South Sixth Street, Suite 4000
Minneapolis MN 55402-1425
(612) 492-7000
(612) 492-7077 (fax)

Attorneys for Plaintiff

4234113_1.DOC