# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| CARDIOVASCULAR SYSTEMS, Inc. | Civil No.:  07-3749 JNE/SRN |
| Plaintiff, | |
| vs. | |
| LEONID SHTURMAN, M.D. | **ANSWER AND AMENDED** |
| Defendant, | **COUNTERCLAIM** |
| vs. | |
| VLADIMIR DRITS, ALEKSEY FILIPPOV, DMITRI PROUDNIKOV, and SERGEY KOLOKOLNEV | |
| Additional Counterclaim Defendants. | |

For his answer to the complaint of plaintiff Cardiovascular Systems, Inc. ("CSI"), defendant Leonid Shturman, M.D. ("Shturman") states and alleges as follows:

## OVERVIEW

1.      Years ago CSI consciously decided to terminate its relationship with Dr. Shturman, the individual who founded the company and who throughout the 1990's was its chief executive officer.  After going unpaid for seven months, and after being repeatedly urged to resign, Shturman finally acknowledged CSI's months-earlier constructive termination of his employment and sent CSI a formal letter of resignation on February 15, 2002.  Now, years later, CSI is trying to steal Shturman's inventions and developments, through both spurious legal claims and, literally, through theft.  Not content simply to steal and use Shturman's machine tools and associated intellectual property, CSI in this case seeks

inventions Shturman made after he left CSI which, if CSI is to be believed, CSI has known about for more than 5 years without taking any steps to claim or protect. Shturman is entitled to a determination that he owns the rights to his own work, and to be reimbursed for the property already taken from him.

## ANSWERS TO INDIVIDUAL ALLEGATIONS OF COMPLAINT

2. Shturman admits that CSI is a Minnesota corporation and is without information as to the location of CSI's principal place of business but understands that CSI represents that its principal place of business is at 651 Campus Drive, Saint Paul, Minnesota.

3. Shturman admits the allegations in paragraph 2.

4. Answering the allegations in paragraph 3, Shturman admits that the action purports to seek declaratory and other relief, but denies that CSI is entitled to any of the relief it seeks.

5. Shturman denies the allegations in paragraphs 4 and 5.

6. Shturman admits the allegations in paragraph 6.

7. Shturman is without sufficient information to admit or deny the allegations in paragraphs 7 and 8 and therefore denies them.

8. Answering the allegations in paragraph 9 and 10, Shturman admits that he signed an Employment Agreement with CSI that was made effective as of March 1, 2000, asserts that the Employment Agreement speaks for itself, and denies the remaining allegations.

9. Shturman admits the allegations in paragraph 11.

10. Answering the allegations in paragraph 12, Shturman admits that the quoted language appears in the Employment Agreement, asserts that the quoted language is only a

portion of that agreement, and incorporates by reference the entire agreement, which speaks for itself.

11. Answering the allegations of paragraph 13, Shturman admits that he sent CSI a letter documenting his resignation on February 15, 2002, but asserts that CSI had constructively terminated the Employment Agreement by failing to pay Shturman or provide funding for Shturman's activities for a substantial period of time prior to February 15, 2002.

12. Answering the allegations in paragraphs 14-16, Shturman admits that he has spent much of his professional career developing atherectomy devices. Occasionally in the period from approximately the summer of 1994, through April, 2002, Dr. Shturman engaged in development activities in Moscow and directed others there to assist him in various ways. Some of those activities involved work on various aspects of rotational and orbital atherectomy devices. Shturman denies the remaining allegations in paragraphs 14-16.

13. Shturman denies the allegations in paragraphs 17, 18, 19, 20, and 21.

14. Shturman denies the allegations in paragraph 22 to the extent they purport to refer to actions undertaken by him, and is without information sufficient to form a belief as to the allegations to the extent they refer to conduct undertaken by others and therefore denies them.

15. Answering the allegations in paragraph 23, Shturman asserts that CSI had ceased providing any significant funds for activities undertaken in Russia well prior to February, 2002, and that Shturman had used his own money to pay for the services of assistants in Russia both before and after he left CSI. Shturman further asserts that at some point in early 2002 he advised his assistants that he may no longer be able to continue to pay them.

16. Shturman denies the allegations in paragraphs 24 and 25.

17. Answering the allegations in paragraph 26, Shturman restates paragraphs 1-16 above.

18. Answering the allegations in paragraph 27, Shturman admits signing the Employment Agreement and further asserts that the claim that the agreement is "binding and lawful" is a legal conclusion as to which no response is required.

19. Shturman denies the allegations in paragraphs 28-32.

20. Answering the allegations in paragraph 33, Shturman realleges paragraphs 1-19 above.

21. Shturman denies the allegations in paragraphs 34, 35, and 37 (and the unnumbered paragraph which presumably was intended to be paragraph 36).

22. Answering the allegations in paragraph 38, Shturman realleges paragraphs 1-21 above.

23. Answering the allegations in paragraph 39, Shturman admits that CSI purports to seek declaratory relief but denies the remaining allegations in paragraph 39.

## GENERAL DENIAL

24. Except as otherwise admitted or qualified above, Shturman denies each and every allegation of plaintiff's complaint.

## AFFIRMATIVE DEFENSES

25. Plaintiff's claims are barred by the doctrines of waiver, estoppel, and laches.

26. Plaintiff's claims are barred by the doctrine of failure of consideration.

27. Plaintiff's claims are barred in that CSI substantially and repeatedly failed to perform under the Employment Agreement, excusing Shturman from any prospective obligation to perform.

28. Plaintiff's claims are barred by plaintiff's unclean hands.

## AMENDED COUNTERCLAIM

For his amended counterclaims against Cardiovascular Systems, Inc. ("CSI") and additional counterclaim defendants Vladimir Drits, Aleksey Filippov, Dmitri Proudnikov, Sergey Kolokolnev, counterclaim plaintiff Leonid Shturman, M.D. ("Shturman") states and alleges as follows:

1. Shturman is a citizen of the United States currently residing in Switzerland.

2. On information and belief, CSI is a Minnesota corporation with its principal place of business in Minnesota.

3. Vladimir Drits ("Drits") is a resident of Minnesota and a citizen of the United States.

4. On information and belief, Aleksey Filippov ("Filippov"), Dmitri Proudnikov ("Proudnikov"), and Sergey Kolokolnev ("Kolokolnev") are currently residents either of Minnesota or Russia.

5. This is an action for declaratory and injunctive relief, theft, conversion, and unjust enrichment. This court has jurisdiction pursuant to 28 U.S.C.§ 1332 in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship.

**BACKGROUND**

6.      Shturman is a medical doctor trained in the former Soviet Union who came to the United States as a refugee in May, 1978. He has worked in various medical device companies and as a medical doctor, and lived in Minnesota from 1987 until the fall of 1998. He moved to Switzerland in 2004.

7.      Shturman incorporated Shturman Technologies, Inc. in 1989, and later founded Shturman Cardiology Systems, Inc. and Shturman Medical Systems, Inc. All three of these companies were incorporated under Minnesota law. Shturman Cardiology Systems, Inc. in 2003 changed its name to Cardiovascular Systems, Inc. ("CSI") and is the plaintiff in this case. Since the early 1990's, CSI has been attempting to develop and sell devices to treat disease conditions of the cardiovascular system. Its most recent product is a rotational atherectomy device originally invented by Shturman. This device is also known as an orbital atherectomy device. Physicians use this device to reduce or remove occlusions in the blood vessels.

8.      Shturman served as the Chairman of the Board, Chief Executive Officer, and a director of CSI from its founding until he was constructively terminated by CSI. Shturman formally notified CSI that his relationship as an employee, officer, and director of CSI had been terminated on February 15, 2002. After February 15, 2002, Shturman's only relationship with CSI was as a shareholder.

9.      By June, 1999, CSI had undertaken various private placements to raise money for its operations as a development stage company and had approximately 172 shareholders. In June, 2000, Shturman moved to Connecticut and the headquarters of CSI was transferred there. In April, 2001, CSI hired a new President, Walter Blair, whose job

was to continue to raise money for the company while Shturman focused efforts on preparing for the first human trials of the rotational atherectomy device. Those trials were to take place in Moscow and later in South America and Western Europe.

10. Mr. Blair was not successful in raising money for CSI and resigned on September 5, 2001. The terrorist attacks on September 11, 2001, created difficulties in the stock market and made it very difficult for CSI to raise any additional funds. By the fall of 2001, CSI told shareholders that the best course of action was to sell the company, and was trying to raise enough money just to stay in business until such a sale could take place.

11. In connection with efforts to develop the rotational atherectomy device, CSI entered into various agreements with Shturman and with Shturman Medical Systems, Inc. CSI entered into an Employment Agreement with Shturman effective March 1, 2000, whereby Shturman agreed to work for CSI an average of 40 hours/week and Shturman agreed to assign to CSI certain inventions made and disclosed to patent attorneys or otherwise documented by Shturman during the term of the agreement. In return, CSI agreed to compensate Shturman at the rate of $240,000 per year (payable at $20,000/month), plus pay various incentive bonuses and expenses, and grant Shturman options on 90,000 shares of CSI stock.

12. In a series of agreements ending with a Working Relationship Agreement dated January 1, 2000, CSI also retained Shturman Medical Systems, Inc. and its Russian subsidiary, ZAO Shturman Cardiology Systems ("SCS Russia"), to perform research and development work with respect to atherectomy products. CSI agreed that it would pay Shturman Medical Systems and its subsidiary, SCS Russia, for the costs of that work. In the agreement CSI also acknowledged that SCS Russia may require machinery, equipment or

devices for research and development and that such devices, machinery or equipment would be the property of SCS Russia or Shturman Medical Systems, Inc, not CSI.  The Working Relationship Agreement automatically terminated March 31, 2001, and no additional agreement existed between CSI and Shturman Medical Systems, Inc. or SCS Russia.

    13.    As CSI ran out of money in 2001, CSI stopped paying Shturman and Shturman Medical Systems, Inc.  CSI also began regularly to urge Shturman to resign.  CSI failed to pay Shturman under the Employment Agreement between July 1, 2001, and February 15, 2002, when Shturman formally acknowledged the termination of his relationships as an employee, officer, and director of CSI.

    14.    During that same period, CSI remitted some limited funds to Shturman Medical Systems, Inc., even though its contract with Shturman Medical Systems had expired, but Shturman himself paid most of the salary and other expenses for Shturman Medical Systems during this period.  Shturman also advised CSI on February 15, 2002, that Shturman Medical Systems, Inc. would undertake no further efforts for CSI.  A copy of the notice letter sent to CSI on behalf of Shturman and Shturman Medical Systems, Inc. dated February 15, 2002, is attached as Exhibit A.

    15.    By notice dated March 4, 2002, CSI advised its shareholders that Shturman had resigned his positions with the company and thanked him for the work he had done with the company.  A copy of that notice is attached as Exhibit B.  CSI never took any exception to Shturman Medical System, Inc.'s statements on February 15, 2002, that no contract existed between the two companies and none had existed since March 31, 2001.

    16.    In March of 2002, several weeks after formally advising CSI that all Shturman's relationships with the company (other than as a stockholder) had been terminated

and several weeks after confirming that his companies, Shturman Medical Systems, Inc. and SCS Russia, had no continuing relationship with CSI, Shturman made an invention in Moscow with respect to a rotational atherectomy device. Shturman made a sketch of his new device and, according to his instructions, Shturman's assistants prepared crude prototypes of the device using one or two solid counterweights and one solid eccentric element (used to simulate the abrasive element of the actual device) on the drive-shaft of the device. The prototypes worked as expected and the invention is described in Patent Application WO 2006/126176, filed in London in 2006.

17.  Also in March of 2002, Shturman made a second invention with respect to a rotational atherectomy device. This invention utilizes one solid symmetric abrasive element and two solid symmetric support elements. The invention is described in Patent Application WO 2006/126175, filed in London in 2006. No one has ever been instructed by Shturman to fabricate a prototype of the device. Shturman never tested the device. Shturman is the sole inventor of this invention.

18.  In February, 2004, and in the spring of 2004, Shturman made two new inventions. These new inventions were: (a) a rotational atherectomy device which can create a flow of fluid around the abrasive element and across the treated stenotic lesion in a direction opposite to the flow of blood along a treated vessel. That retrograde-flowing fluid captures the abraded embolic particles and removes them from the patient's body; and (b) a new method of mounting the abrasive element on the drive shaft. These inventions are described in Patent Application WO 2006/126076, filed in London in 2006.

19. The inventions described in paragraphs 16, 17, and 18, above, were made solely by Shturman and were made after Shturman's agreement with CSI had terminated. CSI has no rights in them.

20. During the course of its work, Shturman Cardiology Russia developed two extremely-complex machine tools used in the manufacture of drive shafts for rotational atherectomy devices. In the spring of 2002, Filippov and Proudnikov, two Russian assistants who had worked with Shturman, offered to take the machine tools for storage and safekeeping in Moscow and Shturman agreed. The machine tools were the product of years of development and had a replacement value well in excess of $1 million. Thereafter, without Shturman's consent, the machine tools, and the associated drawings and electronic information about them, were illegally exported from Russia, and illegally imported into the United States, where they have been utilized by CSI. Shturman has never been paid for the machine tools and all the intellectual property associated with them.

21. After Shturman's resignation, Drits was hired by CSI as the employee or agent responsible for handling the transfer of technology from Russia to CSI. On information and belief, Drits was aware of and assisted with the importation of the machine tools and associated intellectual property from Russia into the United States without payment to Shturman and in violation of Russian export and customs laws and United States import and customs laws.

22. Kolokolnev was an electrical engineer who was an employee of CSI and who had previously worked as an assistant to Shturman in Moscow. On information and belief, Kolokolnev was aware of and assisted with the importation of the machine tools and associated intellectual property from Russia into the United States without payment to

Shturman and in violation of Russian export and customs laws and United States import and customs laws.

23. As a result of CSI's failure to honor its contracts and pay Shturman and Shturman Medical Systems, Shturman experienced serious financial difficulties in 2002. For that reason he was unable to pursue CSI and others for the illegal transfer of the machine tools and associated intellectual property to Minnesota.

### COUNT ONE – DECLARATORY AND INJUNCTIVE RELIEF

24. Shturman hereby incorporates paragraphs 1-23, above.

25. CSI has asserted that Shturman is obligated to assign to CSI the rights to the Patent Applications set forth in paragraphs 16, 17, and 18 of the Answer and Counterclaim.

26. CSI has no rights in the Patent Applications set forth in paragraphs 16, 17, and 18 above, or in the intellectual property described therein.

27. Shturman is entitled to a declaration that CSI has no rights in the Patent Applications set forth in paragraphs 16, 17, and 18 above, or in the intellectual property described therein, as well as a declaration that CSI has no right to force Shturman to assign those Patent Applications or intellectual property rights.

28. Shturman is further entitled to an injunction prohibiting CSI, or its officers, agents or employees, from interfering with (1) Shturman's rights in or use of the intellectual property described in the Patent Applications set forth in paragraphs 16, 17, and 18 above, and (2) Shturman's use of any patents relating to that intellectual property which may ever be issued to him.

### COUNT TWO – CONVERSION

29. Shturman hereby incorporates paragraphs 1-28, above.

30. Drits, Filippov, Proudnikov, and Kolokolnev converted to their own use, or assisted in the conversion to the use of another, the machine tools and associated intellectual property of Shturman.

31. CSI has converted to its own use the machine tools and associated intellectual property of Shturman.

32. CSI, Drits, Filippov, Proudnikov, and Kolokolnev jointly and severally owe Shturman the value of the machine tools and associated intellectual property, which Shturman believes to be in excess of $1 million.

## COUNT THREE - THEFT

33. Shturman hereby realleges paragraphs 1-32, above.

34. Filippov, Proudnikov, and Kolokolnev, acting jointly, stole from Shturman the machine tools, and associated intellectual property, by illegally removing them from Russia and illegally transporting them from Russia to Minnesota, or by assisting in the illegal removal and illegal transport of those items from Russia to Minnesota.

35. CSI and Drits aided and abetted the theft by arranging for the illegal removal and illegal transport of the machine tools and associated intellectual property, and by undertaking to set up and use the machine tools and associated intellectual property once they arrived in Minnesota.

36. CSI, Drits, Filippov, Proudnikov, and Kolokolnev jointly and severally owe Shturman the value of the machine tools and associated intellectual property, which Shturman believes to be in excess of $1 million.

## COUNT FOUR-- UNJUST ENRICHMENT

37. Shturman hereby realleges paragraphs 1-36, above.

38. CSI has been unjustly enriched by the use of Shturman's machine tools and associated intellectual property.

39. CSI owes Shturman the value of the machine tools and associated intellectual property, which Shturman believes to be in excess of $1 million.

## PRAYER FOR RELIEF

WHEREFORE, Shturman prays for relief against CSI, Drits, Filippov, Proudnikov, and Kolokolnev as follows:

1. That the Court enter judgment declaring that each of CSI, Proudnikov, and Filippov has no interest in and that each is not an owner of any of the inventions described above and set forth in Patent Applications WO 2006/126176; WO 2006/126175; and WO 2006/126076 (collectively "the Patent Applications");

2. For judgment against CSI, Drits, Filippov, Proudnikov, and Kolokolnev in such amount in excess of $75,000, which may be determined to be the value of the machine tools and associated intellectual property;

3. For judgment denying CSI any relief on the claims asserted in its complaint; and

4. For an order enjoining CSI, and its officers, agents, employees, and anyone else in active concert with it, from: (1) interfering with Shturman's use of the inventions described in the Patent Applications; or (2) his filing, prosecution or enforcement of any patents related to the inventions described in the Patent Applications; or (3) his reduction to practice of the inventions set forth in the Patent Applications;

5. For Shturman's costs and expenses, and reasonable attorneys' fees, incurred in this action; and

6. For such other and further relief as may be just and equitable.

Dated: October 31, 2007          FAEGRE & BENSON LLP

         s/Robert L. Schnell, Jr.
         Robert L. Schnell, Jr., #97329
         *rschnell@faegre.com*
         2200 Wells Fargo Center
         90 South Seventh Street
         Minneapolis, MN 55402-3901
         (612) 766-7000

         **Attorney for Defendant**
         **Leonid Shturman, M.D.**

fb.us.2392309.01